☑ Original

**CLERK'S OFFICE**
**A TRUE COPY**
May 02, 2022
s/ Michael Longley
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched* )<br>*or identify the person by name and address)* )<br>Records and information associated with the cellular )<br>device assigned (956) 590-9670, whose service provider )<br>is Cricket Wireless; (Fully described in Attachment A) )<br> ) | Case No.  **22-M-453 (SCD)**<br>**Matter No.: 2022R00080** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      5-15-22     *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Hon. Stephen C. Dries      .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     5-2-22 7:50 am

*Judge's signature*

City and state:     Milwaukee, WI          Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A
### Property to Be Searched

1.     Records and information associated with the cellular device assigned **956-590-9670 (TARGET CELL PHONE)**, whose service provider is Cricket Wireless, a wireless telephone service provider headquartered in Atlanta, Georgia.

2.      The **TARGET CELL PHONE**.

**ATTACHMENT B**
**Particular Things to be Seized**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period between January 1, 2021 and the present:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

2

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

v. The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

3

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy), involving **Elias Ruiz** during the period January 1, 2021 to the present.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



**CLERK'S OFFICE**
**A TRUE COPY**
May 02, 2022
s/ Michael Longley
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )

Records and information associated with the cellular )
device assigned (956) 590-9670, whose service provider )
is Cricket Wireless; (Fully described in Attachment A) )

Case No. **22-M-453 (SCD)**
**Matter No.: 2022R00080**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(g)(1);<br>18 U.S.C. 922(j) | Felon in possession of a firearm; possession of a stolen firearm. |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Sean A. Carlson, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means).*

Date: 4-29-22

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

AN APPLICATION FOR A SEARCH WARRANT

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call numbers 956-590-9670 (the "**TARGET CELL PHONE**"), whose service provided is Cricket Wireless, a wireless telephone service provider headquartered in Atlanta, Georgia. The **TARGET CELL PHONE** described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.    Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

3.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy) have been committed, are being committed, or will be committed by Elias RUIZ, and others. The **TARGET CELL PHONE** is described in

Attachment A. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

4.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

5.     I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field Office since November 2015. I have been employed as a full-time law enforcement officer for approximately fifteen years. Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years, and then I served approximately five (5) years as a Federal Air Marshal with the U.S. Department of Homeland Security.

6.     As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

2

7.     Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

8.     I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

9.     Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes.  Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

10.     I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

11.     I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase

3

assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

12.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

13.     There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively: 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy).

## PROBABLE CAUSE

14.     On February 1, 2022, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Special Agent (SA) Sean Carlson and Brown County Sheriff's Officer (Ofc.) Al Wysocki debriefed ATF Confidential Informant no. 30939 (CI 30939).  CI 30939 stated to investigators a black male known to them by the nickname "BUMP" or "BUMPY" was selling large amounts of firearms utilizing Facebook messenger.  CI explained they are contacted on a near weekly basis by "BUMPY" with new firearms that are available to purchase.  CI 30939 stated he/she has known "BUMPY" for approximately four (4) years and has purchased firearms from him in the past.  CI 30939 provided investigators with the Facebook account "BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377)," which BUMPY JOHNSON uses to communicate for all his potential firearms dealings.

4

15.     CI 30939 stated BUMPY acquires his firearms from an unknown Mexican male who drives a burnt orange Dodge Charger sedan and operates near a Mexican grocery store in Green Bay, Wisconsin. CI 30939 further explained the unknown Mexican male gets the firearms from a source in Minnesota who steals them from trains. CI 30939 explained the firearms are usually in pristine unused condition, still inside the manufacturer's packaging.

16.     It should be noted, CI 30939 is providing information to law enforcement in hopes to garner judicial consideration for a pending Wisconsin charge of possession with intent to distribute Fentanyl. CI 30939 has previously been convicted of Armed Robbery, possession of THC, possession of a stolen vehicle (three times), and possession of a controlled substance (two times). Investigators believe the information provided by CI 30939 to be truthful and credible based on Facebook photos from private conversations CI 30939 has provided to investigators that has been able to be corroborated. Additionally, CI 30939 has previously provided narcotics related information to Brown County Sheriff's Officer Al Wysocki that he was able to corroborate through separate investigation. Also, CI 30939 is actively cooperating with law enforcement and was part of a February 2022 recorded controlled buy of a firearm where Jeremy JOHNSON was the target.

17.     Prior to this meeting with CI 30939, Ofc. Wysocki had previously identified "BUMPY JOHNSON" as Jeremy Roman JOHNSON (B/M, DOB XX/XX/1991). JOHNSON was identified via a booking photograph. It should be noted, a search of JOHNSON's criminal history reveals he is a convicted felon, having prior state convictions for Robbery (2009) and Burglary (2009).

18.     On February 9, 2022, ATF, SA Sean Carlson and SA Luke Barker interviewed CI 30939. CI 30939 again stated Jeremy Roman JOHNSON (aka BUMPY JOHNSON) had

5

contacted them in the past few days, utilizing Facebook messenger (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377). CI 30939 stated JOHNSON was offering to sell two (2) Ruger pistols (unknown model and caliber) with silencers. CI 30939 provided SA Carlson the following screenshot of one of the Ruger pistols:



19. CI 30939 stated to investigators, in addition to the two (2) aforementioned Ruger pistols, JOHNSON had previously contacted them when he was selling a Glock pistol (unknown model and caliber), a Springfield Armory XD pistol (unknown model and caliber) with an extended magazine, and a Ruger PC Charger pistol (unknown caliber) with a drum magazine. CI 30939 stated JOHNSON advertised all of these firearms utilizing the same aforementioned Facebook messenger account.

20. CI 30939 stated JOHNSON contacted them about a Taurus pistol (unknown model and caliber) in approximately January 2022, and he was asking $650 for the pistol.

21. CI 30939 stated JOHNSON contacted them about the aforementioned Springfield Armory XD pistol in approximately December 2021, and he was asking $800 for the pistol. CI 30939 provided the following photograph of the pistol, which JOHNSON sent through Facebook

6

Messenger:



22.     CI 30939 stated JOHNSON contacted them about the aforementioned Glock pistol in approximately December 2021, and he was asking $650 for the pistol.   CI 30939 provided the following photograph of the Glock pistol, sent by JOHNSON utilizing Facebook Messenger:



23.     CI 30939 stated JOHNSON also recently sold a multi-colored Ruger PC Charger

pistol (unknown caliber) and CI 30939 stated they took the following photograph of the pistol when it was in JOHNSON's possession:



24.     During the interview with CI 30939, they received an incoming Apple Facetime call from JOHNSON.  Immediately after this call, CI 30939 placed a recorded cell phone call to JOHNSON at the number 920-883-2878.  During the call, JOHNSON stated to CI 30939 that the two (2) aforementioned Ruger pistols, with silencers, were no longer for sale because JOHNSON decided to keep them both for himself.  CI 30939 asked JOHNSON to let them know when he had more firearms for sale, and the call ended.

25.     On February 9, 2022, SA Carlson viewed the Wisconsin Department of Motor Vehicles photograph on file for JOHNSON and compared it to publicly visible photographs for the Facebook account BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377).  SA Carlson determined the person depicted in photographs contained within the account appear to match the DMV photograph of JOHNSON, leading SA Carlson to believe JOHNSON was the person in control of the Facebook Account BUMPY

JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377).

26.    On February 26, 2022, CI 30939 contacted Brown County Sheriff's Officer Al Wysocki stating that JOHNSON messaged them through Facebook Messenger, utilizing the account BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377) offering to sell three AK-47 firearms.  CI 30939 provided investigators with a video which depicted a heavily tattooed left hand and arm picking up three different AK-47 firearms.  One firearm depicted in the video was an AK-47 pistol with large round "drum" high-capacity magazine. One firearm was an AK-47 pistol with a standard magazine.  The final firearm was an AK-47 rifle with full length barrel.  JOHNSON stated to CI 30939 that only the full-length rifle and pistol with drum magazine were available for purchase. JOHNSON stated the third firearm depicted in the video was not for sale because the source intended to keep it for himself.  JOHNSON stated the cost of the firearms were $1,600 for the rifle and $3,000 for the AK-47 pistol with drum magazine.  CI 30939 stated the arm in the video belonged to a previously unidentified Hispanic male, who allegedly supplies JOHNSON his firearms.

27.    Your affiant and Ofc. Wysocki directed CI 30939 to arrange to purchase the firearms from JOHNSON and the unknown Hispanic male on February 28, 2022.

28.    On February 28, 2022, CI 30939 placed a recorded phone call to JOHNSON at the phone number 920-883-2878, in the presence of investigators.  JOHNSON stated he would call the source to determine if he still had the firearms for sale and where they would meet. JOHNSON could be overheard calling the source on speakerphone from a separate unknown phone.  The source stated he would sell the two (2) previously discussed AK-47 firearms at a Planet Fitness, located at 1640 W. Mason Street, Green Bay, Wisconsin.

29.    Immediately following the recorded phone call, surveillance units set up in the

area of the target location. CI 30939 drove to the area of the deal and placed a recorded phone call to JOHNSON as CI 30939 arrived at the location. CI 30939 parked his vehicle, and JOHNSON, who was driving a gold Chevrolet Malibu (bearing Wisconsin plate no. AMT8495), parked next to the CI vehicle. Investigators observed JOHNSON exit the gold Malibu and get into the CI vehicle. A short time later, investigators observed a burnt orange Dodge Charger (bearing Wisconsin plate no. 496ZKX) arrive and park directly to the right of the aforementioned gold Chevrolet Malibu. CI 30939 provided JOHNSON the cash for the firearms, and JOHNSON exited the CI vehicle and got into the Dodge Charger. Investigators observed the driver of the Dodge Charger was a heavy-set Hispanic male. A short time later, investigators observed the Dodge Charger back out of the parking spot, then JOHNSON exited the vehicle holding what appeared to be a black rifle case and a plastic grocery bag. The Dodge Charger drove away, and JOHNSON put the rifle case and plastic grocery bag into the CI's vehicle. CI 30939 then drove out of the area and met investigators at a nearby location to turn over the evidence. The black rifle case contained the two (2) firearms, which were as depicted in the video provided by JOHNSON prior to the deal. The plastic grocery bag contained three (3) standard AK-47 magazines and one (1) AK-47 "drum" style magazine which holds approximately fifty (50) rounds of 7.62 caliber ammunition.

30.     The firearms purchased are more particularly described as a Roman Arms pistol (Model Micro Draco, 7.62 caliber, bearing serial no. PMD 27270), and a Roman Arms Rifle (Model WASR-10, 7.62 caliber, bearing serial no. A1-33420-15).

31.     On March 1, 2022, SA Carlson conducted a search of Wisconsin DMV records and determined the aforementioned 2011 Dodge Charger (bearing Wisconsin plate no. 496ZKX) is registered to Elias RUIZ (H/M, DOB 11/22/1979) at 2214 Imperial Lane, Apt. 3, Green Bay,

Wisconsin 54302.

32.    On that same date, SA Carlson showed SA Kurtzweil and SA Hankins a DMV photograph of Elias RUIZ, with identifying information removed and both positively identified RUIZ as the driver of the aforementioned Dodge Charger.

33.    On March 17, 2022, CI 30939 contacted Ofc. Wysocki. CI 30939 stated that JOHNSON contacted him/her and stated RUIZ was selling two (2) Glock pistols (unknown model and caliber) which had been modified with auto sears which convert the pistols into machine guns. Ofc. Wysocki directed CI 30939 to attempt to purchase the converted pistols.

34.    On March 18, 2022, CI 30939 contacted Ofc. Wysocki and stated JOHNSON told him/her RUIZ returned to town the day prior. JOHNSON stated instead of selling the converted automatic Glock pistols, both RUIZ and JOHNSON each decided to keep one pistol. JOHNSON stated to CI 30939 that since it is spring and the weather is warmer, "pistols are going to sell fast." JOHNSON stated he would let CI 30939 know when he had more firearms for sale.

35.    On April 18, 2022, JOHNSON was arrested by the Brown County Sheriff's Department (BCSD) following a traffic stop. During the search of the vehicle officers located a Springfield (model XD 9, 9mm, bearing serial no. US835119). The firearm was loaded with an extended magazine, which contained twenty-four (24) rounds of ammunition. GBPD officers queried the serial number of the firearm and determined it had been reported stolen from Kentucky. In addition to the firearm, officers located inside the vehicle, approximately 27.29 grams of cocaine base, $557 in US currency, two (2) cellular phones, a drug scale, and an additional five (5) rounds of ammunition located inside a backpack. Following the arrest, during GBPD's routine booking procedure, JOHNSON stated to BCPD Officer Kyle Mason that he currently resides at 1141 Packerland Drive, apartment. 14, Green Bay, Wisconsin.

11

36.     On April 20, 2022, Your Affiant queried Wisconsin DMV records pertaining to JOHNSON and determined on February 17, 2022, JOHNSON updated his residence to 1141 Packerland Drive, apartment 14, Green Bay, Wisconsin.

37.     Based on a review of JOHNSON's criminal history, JOHNSON has previously been convicted of Robbery (2009) and Burglary (2009), which are felonies, in violation of Wisconsin Statute. He is, therefore, prohibited from possessing firearms and ammunition, pursuant to 18 U.S.C. § 922(g)(1).

**ELIAS RUIZ and 956-590-9670 (TARGET CELL PHONE)**

38.     On March 15, 2022, the Honorable William E. Duffin, U.S. Magistrate judge, signed a search warrant for the data associated with the Facebook account BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377).

39.     On March 22, 2022, Your Affiant conducted a search of common law enforcement databases and located the phone number 956-590-9670 (**TARGET CELL PHONE**) as belonging to RUIZ.  On that same date, Your Affiant submitted a grand jury subpoena to AT&T, the owner of Cricket Wireless, for toll records and subscriber information pertaining to this phone number.

40.     On April 19, 2022, Your Affiant reviewed data for the Facebook account BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377), provided by Facebook pursuant to the aforementioned Federal search warrant signed on March 15, 2022.  Your Affiant located conversation, which occurred in April 25, 2021, between JOHNSON and an unknown male using the Facebook Account "REYNALDO ESTUPINIAN," in which REYNALDO ESTUPINIAN is advertising two (2) firearms he is selling.  REYNALDO ESTUPINIAN sends the following photographs to

12

JOHNSON:





41.    On the same date, REYNALDO ESTUPINIAN sent JOHNSON a screenshot from a cellular phone's text message conversation.    The screenshot appears to depict a conversation the user of the profile REYNALDO ESTUPINIAN is having with a contact he has labeled as "ELIAS RUIZ."    The conversation includes smaller photographs of the two (2) firearms depicted above and contains several apparent prices for the firearms.    Based on this conversation Your Affiant believes that for these particular firearms, the owner of the Facebook profile REYNALDO ESTUPINIAN is buying firearms from ELIAS RUIZ and reselling them to JOHNSON.    The screenshot depicts ELIAS RUIZ's cellular phone number as 956-590-9670 (**TARGET CELL PHONE**).    It should be noted, this phone number is the same as the phone

13

number Your Affiant previously identified as being associated with RUIZ.    The following is the screenshot the user of the profile REYNALDO ESTUPINIAN sent to JOHNSON via Facebook:



42.    After the user of the profile REYNALDO ESTUPINIAN sent JOHNSON the above referenced photographs, they both continue discussing the firearms for several days.   In the conversation, JOHNSON agrees to purchase the firearms.   On April 30, 2021, JOHNSON utilized Facebook Messenger to ask the user of REYNALDO ESTUPINIAN when the firearms would be ready. The user of REYNALDO ESTUPINIAN tells him, "my guy is still waiting on you."   JOHNSON replies that he has been ready and asks for a time to meet. The user of REYNALDO ESTUPINIAN responds, telling JOHNSON "call him 9565909670" (**TARGET**

14

**CELL PHONE)**.

43.     On April 26, 2022, Your Affiant reviewed Cricket Wireless subscriber information for 956-590-9670 (**TARGET CELL PHONE**), obtained through Grand Jury Subpoena served on March 22, 2022. Cricket Wireless lists the subscriber of this number as Elias RUIZ. Cricket Wireless further states this account was activated on August 9, 2015, and it remains active as of the drafting of this warrant.

## CELL-SITE DATA

44.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## E-911 PHASE II/ GPS LOCATAION DATA

45.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As

discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

46.     In my training and experience, I have learned Cricket Wireless is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not

necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

47. Based on my training and experience, I know that Cricket Wireless can collect cell-site data E-911 Phase II data about the location of including by initiating a signal to determine the location of the **TARGET CELL PHONE** on Cricket Wireless' network or with such other reference points as may be reasonably available.

48. Based on my training and experience, I know that Cricket Wireless can collect cell-site data about the **TARGET CELL PHONE**.

## **PEN-TRAP DATA**

49. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## **AUTHORIZATION REQUEST**

50. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17

51.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

52.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

53.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET CELL PHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable

18

necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

## **CONCLUSION**

54.     Your Affiant believes that the above information establishes probable cause to believe that cell-site information for the **TARGET CELL PHONE** will assist case agents in determining the location produce evidence of violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy).

55.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET CELL PHONE** outside of daytime hours.

19

## ATTACHMENT A
### Property to Be Searched

1.     Records and information associated with the cellular device assigned **956-590-9670 (TARGET CELL PHONE)**, whose service provider is Cricket Wireless, a wireless telephone service provider headquartered in Atlanta, Georgia.

2.      The **TARGET CELL PHONE**.

**ATTACHMENT B**
**Particular Things to be Seized**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period between January 1, 2021 and the present:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

 vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

 viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

 ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

  1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  2. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

 i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

 ii. Source and destination telephone numbers;

 iii. Date, time, and duration of communication; and

2

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

v. The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

3

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy), involving **Elias Ruiz** during the period January 1, 2021 to the present.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Cricket Wireless ,and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Cricket Wireless The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.       all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Cricket Wireless and they were made by Cricket Wireless as a regular practice; and

b.       such records were generated by Cricket Wireless electronic process or system that produces an accurate result, to wit:

1.       the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Cricket Wireless in a manner to ensure that they are true duplicates of the original records; and

2.       the process or system is regularly verified by Cricket Wireless, and at all times pertinent to the records certified here the process and system functioned properly and normally.

5

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                    Signature

IN RE APPLICATION OF THE
UNITED STATES OF AMERICA FOR
AN ORDER AUTHORIZING THE
INSTALLATION AND USE OF PEN
REGISTER AND TRAP AND
TRACE DEVICE OR PROCESS

App. No. 14807

## APPLICATION FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTERS AND TRAP AND TRACE DEVICES

The United States of America, moving by and through Assistant United States Attorney Christopher Ladwig, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cellular device assigned 956-590-9670 ("the Target Cell Phone"), with listed subscriber Elias Ruiz (the "Target Cell Phone"), such information being in the custody or control of Cricket Wireless (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered in Atlanta Georgia. In support of this application, the United States asserts:

1.      This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and a trap and trace device.

2.      Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and

(3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4. The law enforcement agency conducting the investigation is the United States Bureau of Alcohol, Tobacco, Alcohol, and Explosives (ATF).

5. The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the ATF.

6. This Court is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2) because it "has jurisdiction over the offense being investigated," 18 U.S.C. § 3127(2)(A)(i).

## The Relevant Facts

7. The United States government, including ATF is investigating possible violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy) connected to illegal firearms trafficking and possession by Elias Ruiz and others.

8. The conduct being investigated involves use of the Target Cell Phone. To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from the Target Cell Phone.

9. The pen-trap devices sought by this application will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each

3

communication to or from the Target Cell Phone, including the date, time, and duration of the communication, and the following, without geographic limit:

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cellular device, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;
- Source and destination telephone numbers and email addresses;
- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication.

### Government Requests

10.     For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the Target Cell Phone, along with the date, time, and duration of the communication, without geographic limit. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

11.     The United States further requests that the Court authorize the foregoing installation and use for a period of **30 days**, pursuant to 18 U.S.C. § 3123(c)(1).

12.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order the Service Provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and

4

technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the ATF, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

13. The United States further requests that the Court order the Service Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the ATF of any changes relating to the Target Cell Phone, including changes to subscriber information, and to provide prior notice to the applicant and the ATF before terminating or changing service to the Target Cell Phone.

14. The United States further requests that the Court order that the ATF and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

15. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting pen-trap devices, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court.

16. The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

17.     The foregoing is based on information provided to me in my official capacity by agents of the ATF.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Milwaukee, Wisconsin this 28th day of April 2022.

RICHARD G. FROHLING
United States Attorney


By:     */s/ Christopher J. Ladwig*
CHRISTOPHER J. LADWIG
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

IN RE APPLICATION OF THE
UNITED STATES OF AMERICA FOR
AN ORDER AUTHORIZING THE
INSTALLATION AND USE OF PEN
REGISTER AND TRAP AND
TRACE DEVICE OR PROCESS

App. No. 14807

---

**ORDER**

---

Assistant United States Attorney Christopher Ladwig, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cellular device assigned **956-590-9670 (the "TARGET CELL PHONE")**.

The Court finds that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the ATF of Elias Ruiz and others in connection with possible violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy).

The Court has also issued a Search and Seizure warrant, dated today, under the same docket number, pursuant to Rule 41 of the Federal Rules of Criminal Procedure for, among other things,

data about the cell towers and sectors to which the Target Cell Phone will connect at the beginning and end of each communication.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone, including the date, time, and duration of the communication, and the following, without geographic limit:

- Any unique identifiers associated with the cellular device, including Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").
- Source and destination telephone numbers;
- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for **30 days** from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Service Provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and

8

technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that the ATF reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order notify the applicant and the ATF of any changes relating to the Target Cell Phone, including changes to subscriber information, and to provide prior notice to the ATF before terminating or changing service to the Target Cell Phone;

IT IS FURTHER ORDERED that the ATF have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the ATF, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and this Order, the pen-trap devices, or the investigation to any person, except as necessary to effectuate this Order, unless and until otherwise ordered by the Court; except that the Service Provider may disclose this Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

Dated: _____

_____
Honorable Stephen C. Dries
United States Magistrate Judge

10